OTTO BOLJEN, Plaintiff, *v.* GEORGE R. ELLEGAARD et al., Defendants.

Supreme Court, Special Term, Nassau County, July 29, 1943.

*Myron Sachs* for plaintiff.

*Robert L. Callahan* for defendants.

Cuff, J. The plaintiff is a builder who instituted this proceeding about May 1, 1942, to foreclose a mechanic's lien which he had filed on April 16, 1942. He claims that defendants breached the contract by failing to make the third and fourth (final) scheduled progress payment as that fell due.

There has been a trial.

The facts are: On June 2, 1941, plaintiff and defendants entered into a written contract whereby plaintiff agreed to erect " new Buildings as per plan and specification, same to be made by Louis Danancher, reg. Architect, said specification and plans to correspond with specification, at the present time identified by both party, and now are part of this contract contractor shall pay all architect fees and listing fees for mortgage."

The agreed price was $5,660, to be paid $65 cash, $5,400 by a first mortgage to be secured by the defendants' bond and $195 two months after completion (Exhibit A).

The " specification " referred to is a printed form of building specification prepared by a magazine publishing company, entitled " Bildcost Home Plan " (Defendants' Exhibit C-1). General alternative details for house construction are set forth in the form. A user is expected to correct provisions not applicable to his structure. On the cover of the form is printed: " This specification conforms to the standards of the Federal Housing Administration."

On June 6, 1941, " Articles of Agreement " were signed by the parties (Plaintiff's Exhibit 1). These were also a printed form. The price was changed to $5,400, and the following provision was included: " Monies (to pay for the building) to be derived through a mortgage to be made by a financial institution approved by the Federal Housing Admin-

istration, or any other financial institution, and to be paid by the party of the first part (defendants) to the party of the second part (plaintiff) as work progresses, in such sums and at such times as the financial institution or mortgagee approves and provides for, * * *."

The "financial institution" which agreed to provide the mortgage was the Greater New York Savings Bank. The building loan agreement which was entered into by defendants and the bank stipulated that the third payment (one of the two which plaintiff claims not having been paid breached the contract) was to be made "upon full performance * * * of the terms, covenants and conditions herein contained * * * and upon production of all the necessary certificates * * *."

It further provided that the fourth "Final Advance and Payment" was to be paid "Upon the issuance of said mortgage * * * by the Federal Housing Administration upon the execution and delivery of the extension agreement as herein provided * * *." (Exhibit E.)

This building loan agreement was obtained by plaintiff for defendants and the applicable provisions therein (particularly concerning payments) were made a part of the contract between plaintiff and defendants. The agreement sued upon (Plaintiff's Exhibit 1) provided that plaintiff was to complete the building on or before September 1, 1941, "agreeably to the Drawings and Specifications made by Louis Danancher Reg. Architect." The "specifications of labor and material " by Mr. Danacher were also signed June 6, 1941, by the parties (Plaintiff's Exhibit 3). These were mimeographed forms and each user was expected to fill blanks and cross out language to suit his particular building. Also signed at the same time were plans (Exhibit C) which had been prepared by Mr. Danancher, the architect mentioned for this particular job.

It was testified by defendant George Ellegaard that the plaintiff was to conform the building to the "minimum construction requirements for New Dwellings located in the County of Queens, Nassau and Suffolk of the Federal Housing Administration." A printed pamphlet of twenty-five pages was offered in evidence by defendants (Defendants' Exhibit B-1), bearing that title.

On August 5, 1941, the parties signed a further modification of the agreement (Plaintiff's Exhibit 4). This document of three typed pages commenced with the words "Amendments, additions and changes to and pursuant to building contracts

dated June 2nd, 1941, and June 6th, 1941, and specifications designated as the ' Bildcost Home Plan ' form dated June 3rd, 1941, and specifications and plans drawn by Louis Danancher, architect, dated June 6, 1941 * * *.''

The contract in suit consists of all of the above referred to agreements and forms.

Plaintiff by his lien is demanding $3,041.50, being the balance that he claims has been due on the contract, and $76.50 for extra work since May 1, 1942. The defendants' answer (1) denies that extra work was done and that the contract was performed by plaintiff; (2) defends on the ground that plaintiff has not obtained the certificate of completion from the Federal Housing Administration as the contract required; (3) counterclaims for $3,000 damages, because of plaintiff's poor workmanship and his failure to provide proper materials; and (4) counterclaims for $650 because the house was not sufficiently completed to permit occupancy until April 1, 1942, whereas the extended date for completion in accordance with the contract was October 31, 1941.

Not only did defendants acquiesce in extending the time of rightful possession beyond October 31, 1941, by carrying on negotiations with plaintiff looking toward correcting the situation but there is no substantial proof of damages incurred by reason of the delay. That counterclaim must be dismissed.

Two important questions are presented: (1) Does the failure to issue the completion certificate by the Federal Housing Administration or the bank to make the mortgage loan, defeat plaintiff's suit? (2) Was there substantial performance of the contract by plaintiff?

A glaring error was made by plaintiff in the construction of the staircase. The head room was only 5 feet, 7 inches instead of 6 feet, 3 inches as specified. The building is comparatively small. That stairway is in the center on the main floor. It is the only stairway. It is an outstanding feature of the interior of the building. The head room provided is woefully insufficient. The defendants are not obliged to accept the numerous makeshifts proposed to cure the defect. While substantial performance of a building contract by a contractor in constructing a building is all that the law requires, the phrase '' substantial performance '' is relative. What would be substantial performance in the construction of cellar stairs would not be accepted as such for the main stairway of the premises. The staircase in question was intended to be put to constant use. It was also designed to add beauty to the house. The defend-

ants are entitled to a stairway which accomplishes the ends of usefulness and decoration which they had in mind.

If the doctrine of substantial performance is to be applied, there should be deducted from the unpaid balance due on the contract sufficient to allow for the reconstruction of that stairway in accordance with the plans and specifications, eliminating any appearance of patchwork.

Defendants contend that deviation from the contract has been so radical that substantial performance is not applicable. This case is very similar to *Crouch* v. *Gutmann* (134 N. Y. 45). Substantial performance was recognized in that instance.

As happens in all of these cases, by the time the trial was completed numerous instances of nonconformity in construction and defective work were testified to by defendants and their witnesses. The court listed thirty-nine items of complaint. All, including the staircase, may be corrected. The court finds that it would serve no purpose to make findings upon those items because the complaint must be dismissed for another reason.

The inability of plaintiff to satisfy the bank that the house he built conformed to the plans and specifications which caused the bank in turn to withhold the mortgage loan is vital. When plaintiff and defendants entered into their negotiations, plaintiff was made to understand that defendants did not possess the funds necessary to pay for the work. In the " Articles of Agreement " (Exhibit 1) there is the provision " Monies [meaning the money to pay plaintiff] to be derived through a mortgage \* \* \*." That phase of the relationship of the parties was discussed from time to time prior to and during the terms of the contract. Plaintiff assured defendants that he could arrange a mortgage guaranteed by the Federal Housing Administration in the amount needed. It is clear, therefore, that defendants were relying upon the proceeds of that mortgage loan to meet their financial obligations to plaintiff and, as far as this court has any knowledge, defendants may have no other resources. That is important, because if it were held that plaintiff substantially performed and he was given a judgment in a sum equal to the amount due less the deductions determined upon, where would defendants obtain the funds with which to discharge that judgment? They depended upon the mortgage loan for just that. The bank has declined to advance the money until the " certificate of completion " of the house is issued by the Federal Housing Administration. These happenings cannot be charged to defendants. They **are**

attributable to plaintiff. No obligation may be placed upon them to make another and different loan in order to finance the alterations on the house which may be found necessary.

To dismiss this complaint the court considers drastic judicial action, indeed. Yet there is no alternative.

"Where the parties to a building contract", said the court in *Hamilton College* v. *Roberts* (223 N. Y. 56, 62), "leave the approval of the work to some third person, the workman desiring his pay must furnish such approval or show its refusal has been unreasonable or in bad faith."

The fact remains when this complaint is dismissed that defendants find themselves in possession of a building for which they paid $3,060 and which is worth considerably more, solely by reason of an honest mistake by plaintiff, which could have been and still can be corrected. This court may not subscribe to such a result. It will be held therefore that this proceeding has been prematurely brought; that judgment dismissing the complaint, with costs, will be entered without prejudice, however, to plaintiff's instituting a new proceeding when and if he is able to obtain a proper certificate of completion of his contract from the Federal Housing Administration and the completion of the mortgage loan by the Greater New York Savings Bank and upon condition that he pay $200 terms to partially cover the expenses to which defendants have been subjected in defending this action.

Because of that disposition of the matter, defendants' first counterclaim for defective work, et cetera, must be dismissed.